**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ALICE JOURNET *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4730 |
| | § | |
| VEHICLE VIN NO. | § | |
| 1GRAA06283T500670, *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a product liability case involving an automobile collision with an eighteen-wheeler's tractor trailer on an eighteen-wheeler truck. Plaintiffs Alice Journet, Howard Journet, and Deandrick Fields, individually, and as representatives of the estate of Barranthia Journet and as guardian of Dalyah Mone and Deijah Corinne Journet Fields, sued various defendants, alleging defective design, manufacture, and marketing of the trailer. Plaintiffs specifically allege that defendants are liable because the trailer did not have a side underride guard protector or elevation added that, according to plaintiffs, would have prevented the smaller vehicle from "submarining" underneath the trailer, with catastrophic consequences for the occupants. (Docket Entry Nos. 1, 3, 38).[1] In this case, the driver, Barranthia Journet, received gruesome fatal injuries; the accident also allegedly pinned her young children in the wreckage with their mother's body for approximately twenty minutes. Plaintiffs' amended

---

[1] Plaintiffs' motion for leave to file an amended complaint (Docket Entry No. 37), is granted.

complaint named the truck trailer with the identification number 1GRAA06283T500670; a "John Doe" trailer manufacturer, distributor, engineer, and designer; the Great Dane L.P., Dane Acquisition Corp., Great Dane Trailers, f/k/a Great Dane Trailers, Inc., Henry Crown Co. f/k/a CC Industries Inc., (collectively, the "Great Dane Defendants"), which manufacture tractor trailers; and the Truck Trailer Manufacturer Association, Inc. ("TTMA"), an industry trade association. Defendant TTMA has moved to dismiss based on lack of personal jurisdiction. (Docket Entry No. 4). This court permitted plaintiffs to take jurisdictional discovery. (Docket Entry No. 22). Based on the motion, the response, the parties' submissions, and the applicable law, this court now grants defendant TTMA's motion to dismiss, for the reasons stated below.[2]

## I.    Background

The collision at issue occurred in Houston, Texas in December 2002. Plaintiffs allege that Barranthia Journet's vehicle collided with the side of an eighteen-wheel tractor trailer. According to the amended complaint, the trailer lacked a side underride guard or sufficient elevation to protect against a smaller vehicle traveling under the trailer in a collision. (Docket Entry No. 38, ¶¶ 17–22). Plaintiffs assert causes of action under Texas law for defective design product liability, strict liability, negligence and gross negligence, negligent undertaking, wrongful death, loss of consortium and support, as well as bystander liability, intentional, malicious, and knowing conduct, and vicarious liability. (Docket Entry No. 38).

---

[2] The Great Dane Defendants' motion for leave to designate responsible third parties, (Docket Entry No. 27), is also granted. These defendants also moved for leave to file an amended answer. (Docket Entry No. 47). Plaintiffs conditionally opposed the motion on the ground that the answer was vague. The motion for leave to file the amended answer is granted; the answer meets the pleading requirements.

TTMA is a nonprofit trade organization comprised of truck trailer and tank trailer manufacturers, as well as cargo container, cargo tanks for trucks and container chassis manufacturers. (Docket Entry No. 4, Exhibit B). TTMA also represents material and component suppliers to the industry. (*Id.*). TTMA is headquartered in Virginia and incorporated in the District of Columbia. (Docket Entry No. 4, Exhibit A ¶ 3). TTMA's main office is located in Alexandria, Virginia. TTMA is not registered to do business in Texas and it has no registered agent for service of process in Texas. (*Id.* at ¶¶ 2–4). TTMA asserts that it plays no role in the sale, marketing, development, design, or manufacture of its members' products. (*Id.* at ¶ 3; Docket Entry No. 63, Exhibit C at 124). TTMA does not visit any of its members' plants or headquarters. (Docket Entry No. 4, Exhibit A ¶ 3). The stated purpose of TTMA is to "establish confidence between manufacturers of truck trailers, cargo tanks, intermodal containers and their suppliers to bring about a mutual understanding of the problems confronting all manufacturers." (Docket Entry No. 63, Exhibit E ¶ 3). TTMA focuses on federal regulations concerning the trucking industry. (Docket Entry No. 63, Exhibit L ¶ 4).

TTMA has approximately seventy members, some of whom, including past and present board members, are from Texas. (*Id.* at ¶ 8; Docket Entry No. 60, Exhibits U; AA at 50, 59; BB). The only time TTMA as an organization came to Texas was in April 1999, when TTMA held a board meeting at San Antonio, Texas hotel. (Docket Entry No. 4, Exhibit A at ¶ 7). TTMA sends regular email and postal correspondence to its members, including those in Texas. (*Id.* at ¶ 6; Docket Entry No. 60, Exhibits F–O). TTMA also

operates a website. (Docket Entry No. 14, Exhibit A). The website offers information about membership and provides an email address to which individuals may send questions. The website also makes membership applications available and posts a list of literature that website visitors may purchase. Visitors can neither join nor purchase reading material directly from the website; instead, a website visitor must print out a form and submit the form and mail payment to the TTMA's Virginia office. (Docket Entry No. 14, Exhibit H). TTMA's website also provides visitors with links to Internet information about, and websites for, various government agencies involved in regulating the industry. (Docket Entry No. 14, Exhibits D, E, F). TTMA also offers its members access to a joint defense project, through which its members can consult with an attorney retained by TTMA about pending litigation matters. (Docket Entry No. 57, Exhibit F).

After TTMA moved to dismiss for lack of sufficient contacts to support personal jurisdiction, plaintiffs asked for a continuance to conduct limited jurisdictional discovery, which this court allowed. (Docket Entry No. 22). After deposing a TTMA corporate representative and obtaining additional information, plaintiffs moved for leave to file an amended complaint. (Docket Entry No. 37). TTMA has supplemented its motion to dismiss, (Docket Entry No. 23); and plaintiffs have filed supplemental responses, (Docket Entry Nos. 57, 59, 60), and TTMA has replied, (Docket Entry No. 63).

## II.    The Applicable Legal Standard

"In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law." *Panda Brandywine Corp. v.*

*Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). The Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.*, confers jurisdiction to the limit permitted by due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990) (citation omitted); *see also Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413 n.7 (1984). In Texas, the personal jurisdiction inquiry is coterminous with the due process analysis. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424–25 (5th Cir. 2005).

Due process limits the exercise of personal jurisdiction over nonresident defendants to cases in which defendants purposefully establish "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A court must determine whether the defendant has established the requisite minimum contacts with the forum state and whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Polythane,* 993 F.2d at 1205 (citations omitted).

A court may assert personal jurisdiction under a theory of either "general" or "specific" personal jurisdiction. A court exercises specific jurisdiction over a defendant if the cause of action alleged arises out of or is related to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414 n.8. When a court exercises personal jurisdiction over a defendant in a case *not* arising out of or related to the defendant's contacts with the forum state, the court is exercising general jurisdiction over the defendant. *Id.* at 414 n.9.

A court may exercise specific jurisdiction if: (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The plaintiff must demonstrate a nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1390 (5th Cir. 1987). A court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir. 1988) (citations omitted). Specific jurisdiction is limited to adjudication of the particular controversy that arises out of or is related to the defendant's contacts with the forum. *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1986). Even a single act can support specific jurisdiction if it creates a "substantial connection" with the forum. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros*, 466 U.S. at 414–15; *Bearry v. Beech Aircraft Corp.* 818 F.2d 370, 374 (5th Cir. 1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine,* 897 F.2d 1359, 1362 (5th

Cir. 1990) (citations omitted). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (citations omitted)).

When a nonresident defendant challenges *in personam* jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Bolin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)) (additional citations omitted). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).

The Fifth Circuit has adapted the analysis for analyzing an out-of-state defendant's contacts with the forum state to contacts through the Internet. In *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336–37 (5th Cir. 1999), the court adopted the "spectrum" analysis set out in

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). At one end of the spectrum are situations in which "a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet." *Id.* at 336 (internal citations and quotations omitted). In these situations, personal jurisdiction is appropriate. At the other end of the spectrum are situations in which "a defendant merely establishes a passive website that does nothing more than advertise on the Internet." *Id.* In these situations, personal jurisdiction does not exist without more. In the middle of the spectrum are situations in which "a defendant has a website that allows a user to exchange information with a host computer." *Id.* When analyzing these middle-ground cases, "the exercise of jurisdiction is determined by the level of interactivity and the commercial nature of the exchange of information that occurs on the Website." *Id.* (internal citations and quotations omitted). Recent Fifth Circuit case law has cast doubt on the utility of this analysis in the context of deciding general jurisdiction. *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) ("While we deployed this sliding scale in *Mink v. AAAA Development LLC*, it is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction – in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas.") (emphasis in original). Based on this recent clarification, demonstration of substantial interaction may be considered necessary,

but not sufficient, to demonstrate general jurisdiction.  *See Arriaga v. Imperial Palace, Inc.*, 252 F. Supp. 2d 380, 386–87 (S.D. Tex. 2003).

## III.  Analysis

### A.  General Personal Jurisdiction

TTMA's non-Internet contacts with Texas are not continuous or systematic as required for general personal jurisdiction.  TTMA sends regular bulletins, publications, and other correspondence (including reminders to pay dues) to all its members, including those residing in Texas.  (Docket Entry No. 60, Exhibits F–O; Z; AA at 93–94; II).  Sending mail to residents of the forum state does not create systematic involvement with that state.  *See, e.g.*, *Stuart*, 772 F.2d at 1193 ("[A]n exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws.") (citing *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 187–88 (5th Cir. 1978); *Benjamin v. W. Boat Bldg. Corp.*, 472 F.2d 723, 729 (5th Cir. 1973)).

Plaintiffs emphasize the fact that membership in a trade association is a contract under Texas law.  *See, e.g.*, *The Experimental Aircraft Assoc., Inc. v. Doctor*, 76 S.W.3d 496, 505 (Tex. App. – Houston [14th Dist.] 2002, no pet.).  The Fifth Circuit has held that "merely contracting with a resident of the forum state is insufficient . . . to subject the nonresident to the forum's jurisdiction."  *Colwell Realty Invs., Inc. v. Triple Inns of Ariz., Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986) (citing *Burger King*, 471 U.S. at 479; *Spademan*, 772 F.2d at

1192–93). In a recent Fifth Circuit case, for example, the court rejected a claim of general

jurisdiction even though the defendant "contracted with the Texas-based defendant [, OTSI],

initiated and contemplated a long-term business relationship with OTSI, communicated with

OTSI concerning the development and execution of the contract, and wired money to OTSI

in Texas." *Freudensprung*, 379 F.3d 345. The court held that none of those contacts

indicated that the defendant "intended to avail itself of the privilege of doing business in

Texas." *Id.* The contacts between TTMA and Texas shown on the present record are even

weaker than the ones at issue in *Freudensprung*. TTMA does not negotiate or communicate

with Texas residents about potential long-term contracts; the only "contracts" between

TTMA and Texas residents are for the payment of membership dues and the receipt of trade

publications. (Docket Entry No. 63, Exhibit L ¶¶ 4, 7, 12). Membership dues from Texas

entities comprise approximately five percent of TTMA's budget. (*Id.* at ¶ 11; Docket Entry

No. 60, Exhibit AA at 77–85).[3] None of these contracts are sufficient to show that TTMA

intended to avail itself of the privilege of doing business in Texas.

---

[3] Plaintiffs attempt to rebut many of the declarations made in the Bowling affidavit. However, these attempts largely fail. For example, plaintiffs submitted an email signed by "Mark Rogers, Major, Texas Highway Patrol Division – Chief's Staff, Commercial Vehicle Enforcement Service." (Docket Entry No. 60, Exhibit T). This document discusses enforcement of federal regulations within the State of Texas. TTMA staff forwarded the email to a Texas TTMA member. Plaintiffs claim that this document undermines Bowling's claim that TTMA focuses on federal, not state, regulations. The email related to Texas in terms of enforcement, but did not involve Texas law; it is consistent with Bowling's affidavit.

In his deposition, Bowling did alter his testimony about the percentage of total revenue Texas members contribute to TTMA after being presented with different statistics and information from TTMA's financial documents. Any change in the revenue figure is *de minimis*. Resolving this conflict in plaintiffs' favor does not change the outcome of this motion or affect the analysis.

Plaintiffs also attempt to use TTMA's involvement with litigation, including litigation pending in Texas, as a basis for establishing general personal jurisdiction over TTMA in Texas. Plaintiffs argue that TTMA has "gratuitously undertaken to participate in the defense and/or prosecution of **Texas** litigation involving the design, manufacturing, marketing and/or the regulation of tractor trailers of the type involved in this litigation." (Docket Entry No. 38, ¶¶ 16B) (bold face type in original). Plaintiffs assert that TTMA has filed pleadings in cases filed in Texas and other states. (*Id.* at ¶ 16EE). TTMA responds that its involvement in litigation involving its members is only through the joint defense project, under which any TTMA member may consult with a lawyer retained by TTMA for up to two hours about actual or pending litigation. Plaintiffs fail to substantiate their assertions that TTMA has taken an active role in defending lawsuits filed in Texas. Plaintiffs submitted an *amicus* brief filed by TTMA in the Supreme Court of Oregon, and a motion for leave to file an *amicus* brief in the Supreme Court of the United States. (Docket Entry No. 60, Exhibits DD, EE). TTMA was not a party in either case and neither case arose from litigation in Texas.

Plaintiffs further contend that TTMA's assertions of privilege in the jurisdictional discovery in this case invoked Texas privilege law and thereby created general jurisdiction in Texas. (Docket Entry No. 58 at 8–9). Even assuming, without deciding, that such an argument could create jurisdiction, plaintiffs cannot do so on this record. TTMA objected at the deposition on the basis that plaintiffs' questions exceeded the permissible scope of the deposition, not on the basis that Texas law on attorney-client privilege applied. (Docket Entry No. 60, Exhibit AA). Plaintiffs also argue that TTMA President Richard Bolling's

decision to comment to a reporter covering a different tractor trailer collision case in Texas (*Maravilla*) provides a jurisdictional hook. (*See* Docket Entry No. 63, Exhibit H, Douglas Pasternak, *Are truck 'underride' crashes preventable?*, U.S. NEWS & WORLD REPORT, Oct. 2 , 2000, at 40). The *Maravilla* plaintiffs did not sue TTMA, Bowling did not testify in that case, and Bowling offered no specific comment on that case. (*Id.*). The comment indicates no contact between TTMA and Texas that might form the basis for general jurisdiction.

Examining TTMA's website and Internet contacts with Texans and others shows no basis for general personal jurisdiction in Texas. This court need not determine whether the *Mink*/*Zippo* test remains good law in this circuit in determining general jurisdiction because TTMA's website lies somewhere between the middle and the passive end of the *Mink*/*Zippo* spectrum. The TTMA website does not specifically target Texas residents. No interactive commercial conduct takes place; instead, potential members or literature-buyers must print out a form and submit the paperwork on line, making payment of dues or for literature through the mail. Although the website includes a TTMA email address, providing such an address is insufficient to create personal jurisdiction. *See, e.g.*, *Mink*, 190 F.3d at 337 ("In this case, the presence of an electronic mail access [link], a printable order form, and a toll-free phone number on a website, without more, is insufficient to establish personal jurisdiction."). The record reveals that TTMA's website was generally available and was not purposefully directed to Texas residents. *Accord Revell*, 317 F.3d at 475 (rejecting a claim of minimum contacts based on Internet activity because "the post to the [Internet] bulletin board here was presumably directed at the entire world, or perhaps just concerned U.S.

citizens") (analogizing to and citing with approval *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002); *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001)). The TTMA website is tailored to specific manufacturers and producers, not to residents of Texas.[4] (Docket Entry No. 4, Exhibit B). Additionally, the membership forms are identical regardless of the location of the customer. (Docket Entry No. 63, Exhibit L ¶¶ 6–10).

None of this activity, virtual or otherwise, provided TTMA fair warning that it could be haled into a Texas court. The requirement of substantial, continuous, and systematic contacts between TTMA and Texas is not met. Plaintiffs have not presented a *prima facie* case for general jurisdiction over TTMA.

### B.    Specific Personal Jurisdiction

To establish specific personal jurisdiction over TTMA in Texas, plaintiffs must demonstrate that TTMA purposely directed activities toward Texas or purposely availed itself of the privileges of conducting activities here and that the causes of action in this lawsuit arise out of or are related to those TTMA contacts.

The fact that some of TTMA's members are from Texas and that TTMA corresponded with Texas residents does not create specific personal jurisdiction. Similarly, plaintiffs have not connected TTMA's website to the incident at issue. In *Young Against Products, Inc. v. Accord*, 307 F. Supp. 2d 713 (D. Md. 2004), cited by plaintiffs, the court found specific jurisdiction based in part on the fact that the defendant's Internet activity related directly to

---

[4] *Young Against Products, Inc. v. Accord*, 307 F. Supp. 2d 713 (D. Md. 2004), cited by plaintiffs in support of their argument that general jurisdiction exists, analyzed the Internet activity at issue in the context of specific jurisdiction. *See id.* at 715−16. This case is addressed in the specific jurisdiction section.

the subject of the lawsuit. *Id.* at 717. In this case, TTMA's Internet activity – providing Internet links to government agencies and providing information about TTMA, membership forms, and offering publications for sale – is not directed at Texas and does not specifically relate to the causes of action asserted in this case. *Cf. Revell*, 317 F.3d at 472 ("Since this defamation action does not arise out of the solicitation of subscriptions or applications by Columbia, those portions of the website need not be considered.").[5] The website is insufficient to create specific jurisdiction.

Plaintiffs attempt to use the fact that TTMA issues a set of "Recommended Practices" to its members as a basis for asserting personal jurisdiction over TTMA. Plaintiffs allege a connection between these "Recommended Practices," which it characterizes as regulatory standards, and the highway accident that occurred in Texas. (Docket Entry No. 38 ¶¶ 16, 16G,16J, 16L, 16W, 16BB, 18, 19, 20, 22, 24, 25, 28). Plaintiffs introduce evidence of "TTMA Compliance Labels" that TTMA issues to members to attach to products conforming with the "Recommended Practices." (Docket Entry No. 60, Exhibits L, M). Plaintiffs submit an example of one such label: "A B C COMPANY CERTIFIES THIS REAR IMPACT GUARD TO BE IN COMPLIANCE WITH TRUCK TRAILER MANUFACTURERS ASSOCIATION RECOMMENDED PRACTICE NUMBER 92-94." (Docket Entry No. 60, Exhibit M). The record shows that TTMA does not design, manufacture, or sell truck trailers

---

[5] In *Revell*, the alleged torteasor posted the allegedly defamatory material on an Internet bulletin board hosted by Columbia University in New York. 317 F.3d at 469. A Texas plaintiff attempted to sue Columbia in Texas based on this allegedly defamatory statement. The court conducted the *Mink/Zippo* analysis in determining whether specific jurisdiction existed. In this case, TTMA's Internet activity is not directed to Texas nor alleged to be the basis of the allegedly tortious conduct; further analysis of the website is unnecessary.

and did not provide information or materials relating to the design of the specific trailer at issue. (Docket Entry No. 63, Exhibit J ¶¶ 1–4). Plaintiffs allege a conspiracy between TTMA and the Great Dane defendants to "falsely present to the marketplace in Texas and elsewhere that trailers having no side underride guard protection represent the 'state of the art' design of such trailers," and that "TTMA has aided and abetted the Great Dane defendants in its . . . marketing campaign to discourage the use of side underride guard protection. . . ."[6] Plaintiffs allege that Great Dane followed TTMA's "Recommended Practices" for trailer design, and that TTMA and Great Dane knew or should have known that trailers designed in conformity with the "Recommended Practices" would end up in Texas. (Docket Entry No. 38, ¶¶ 18, 20).

There are two problems with plaintiffs' argument as the basis for specific personal jurisdiction. First, the activities plaintiffs allege are not specifically targeted to Texas. Plaintiffs introduced a single contract, a TTMA membership agreement, between TTMA and Great Dane,[7] which is identical to the contracts TTMA has with its members throughout the country. (Docket Entry No. 60, Exhibit L ¶ 7); *cf. Colwell Realty*, 785 F.2d at 1334. Any

---

[6] Plaintiffs introduce a single document entitled, "Organizational Information for the Truck Trailer Manufacturers Association," to support plaintiffs' allegation that TTMA advertised trailers lacking side underride protection as "state of the art." (Docket Entry No. 60, Exhibit Y). The term is in a sentence under the heading "Staff Functions," which reads "To maintain regular contact with university, industrial, and for-hire research organizations such that the TTMA members are kept abreast with transportation state-of-the-art." (*Id.* at 2). This out-of-context use of the term "state of the art" does not corroborate plaintiffs' allegations.

[7] The parties do not dispute that Great Dane belonged to TTMA at the time of the accident. Although Bowling testified that he could not find a membership agreement between TTMA and Great Dane, he conceded that Great Dane has been a TTMA member since 1942. (Docket Entry No. 63, Exhibit L at ¶ 5).

performance by TTMA under the membership agreement with Great Dane has taken place outside Texas.[8]  Great Dane's principal places of business are in Chicago, Illinois and Savannah, Georgia.  (Docket Entry No. 38 ¶ 12).  TTMA's other activities are similarly unrelated to Texas.  TTMA conducts activities relating to its role as a trade association in Washington, D.C.  (Docket Entry No. 63, Exhibit L ¶ 4; Exhibit G at 9).  TTMA holds meetings (save the lone meeting in San Antonio several years ago, unrelated to this lawsuit) in places outside Texas.  (Docket Entry No. 63, Exhibit E ¶¶ 8–9); *cf. Patterson*, 764 F.2d at 1147.  Finally, even presuming that Great Dane has activities in Texas and communicates with TTMA while there – a proposition unsupported by the record – any communications would be considered "mere fortuity."  *Cf. Stuart*, 772 F.2d at 1193.

The Fifth Circuit has rejected claims of specific jurisdiction in cases with much stronger evidence of contacts among the defendant, the forum, and the cause of action.  In *Harvey*, for example, the court held that no specific jurisdiction existed in spite of evidence of the following contacts relating to the underlying controversy: (1) defendant entered into a contract with plaintiff, a Texas corporation; (2) defendant sent a final revised joint operating agreement from Oklahoma to Texas; (3) defendant sent three checks from Oklahoma to Texas in partial performance of its contractual obligations; and (4) defendant engaged in extensive telephonic and written communications with plaintiff.  801 F.2d at 778.  Taking each contact in turn, the court held that (1) merely contracting with a resident of the forum state is insufficient to subject a nonresident to the forum's jurisdiction; (2)

---

[8]  Great Dane sends its membership dues *to* TTMA in Virginia.

performance of the contract centered in Oklahoma, not Texas; (3) the fact that payment was sent to Texas did not weigh heavily on the determination; and (4) the exchange of communications between Oklahoma and Texas was a "mere fortuity." *Id.* (citing *Colwell Realty*, 785 F.2d at 1334 (contracting); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (performance); *C & H Transp. Co. v. Jensen & Reynolds Constr. Co.*, 719 F.2d 1267, 1270 (5th Cir. 1983) (mailing payment); *Stuart*, 772 F.2d at 1193 (communications)) (additional citations omitted); *see also Freudensprung*, 379 F.3d at 344 ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.") (citations omitted).

Second, the allegations relating to TTMA's list of "Recommended Practices" are not sufficiently connected either to Texas or to this lawsuit to support specific personal jurisdiction. TTMA is alleged to have made the list available to all its members, not merely those in Texas; the member at issue, Great Dane, is not a Texas resident. The list by its own terms is not binding on any member or other manufacturer of truck trailers. (Docket Entry No. 63, Exhibit F § 1.6 ("Conformity with TTMA publications by manufacturers, users and repairers of truck trailers is voluntary and any non-conformity with such publications is not indicative of the non-conforming practice being deficient.")). Nothing in the record shows that TTMA issued a "Recommended Practice" on side underride guard protection rails on

tractor trailers.  The evidence does show that TTMA monitors, comments on, and informs

its members about federal regulations.[9]  (Docket Entry No. 63, Exhibit L ¶¶ 2–4).  Among

the information TTMA has distributed to its members is a National Highway Transportation

Safety Administration (NHTSA) publication on side underride protective devices, which are

the subject of this lawsuit.  (Docket Entry No. 63, Exhibit N).[10]  In distributing this federal

publication, TTMA merely disseminated the existing NHTSA information on such devices.[11]

Plaintiffs cite two cases in which the "Recommended Practices" list is mentioned, but neither

case supports an argument that TTMA issued a "Recommended Practice" on side underride

protective devices on tractor trailers or that "Recommended Practices" are a benchmark for

safety or design.[12]  The record shows that TTMA does not design, manufacture, or sell truck

---

[9] Plaintiffs submit exhibits to support their claim that "TTMA publishes, circulates and sells to Texas residents, and others, its 'recommended practices' pertaining to how trailers of the type involved in this case are to be manufactured and/or designed, including providing engineering statements and advice about the 'state of the art' governing such trailers."  (Docket Entry No. 60 at 2 (citing Exhibits F–O, Y, II, and J)).  The exhibits do not fit this characterization.  Instead, they pertain generally to the TTMA litigation defense project, membership dues, lobbying activity, meeting minutes, TTMA publications, and other background material.

[10] TTMA argues that the NHTSA study concluded that the devices proved more costly than necessary, and that the federal government does not require that trucks include these devices.  (Docket Entry No. 63 at 11–12 (citing Exhibit N at 15)).  TTMA did not submit a complete copy of the study.  The issue in this motion is not the costs or benefits of such devices, but rather whether TTMA may be subject to jurisdiction in Texas because it played a role sufficiently connected to the forum and the causes of action.  On this issue, the record is clear.

[11] To the extent plaintiffs argue that TTMA's lobbying activity resulted in rejection or delay of a side underride device requirement, the record lacks any corroboration of this claim.

[12] The cases are *Truck Trailer Mfrs. Ass'n v. Alvarez*, 692 So. 2d 197 (Fla. App. 2 Dist. 1997) and *P.A.M. Transport., Inc. v. Pines Trailer Ltd. Partnership*, 1995 WL 1945550 (N.D. Miss. 1995).  (Docket Entry No. 58 at 10).  The first case is a one-line denial of review.  In the second case, the court granted a defendant's motion for summary judgment and did not find TMMA's "Recommended Practices" applicable to the case.

trailers in general and participate in the design, manufacture, or sale of the trailer at issue. (Docket Entry No. 63, Exhibit J ¶¶ 1–4). There are simply insufficient contacts between TTMA and Texas or TTMA and the events of this lawsuit to support specific personal jurisdiction.

Plaintiffs make a related argument that specific jurisdiction exists under a "stream of commerce" theory. (Docket Entry No. 58 at 28–29). *See generally Asahi Metal Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102 (1987). Although Supreme Court case law remains unclear as to whether additional conduct must be demonstrated,[13] plaintiffs have not attempted to establish *prima facie* jurisdiction under a stream-of-commerce theory. *Cf. Kulter Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd.*, 860 F. Supp. 1055, 1061 (D.N.J. 1994) ("The theory is generally employed to establish specific jurisdiction – where plaintiff's cause of action arises directly from the product placed by defendant into the stream of commerce.") (citing *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985)). The record contains no evidence that TTMA played any role in introducing the truck into the stream of commerce. *Cf. World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980) (holding that personal jurisdiction did not exist because plaintiff failed to introduce any evidence that the distributor of defendant's product ever sold the product to customers

---

[13] The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi Metal Co.*, 480 U.S. at 112 (O'Connor, J., concurring). Justice O'Connor's plurality opinion also provided four factors to use in determining whether a business purposefully directed a product toward the forum state (beyond introduction of the product into the stream of commerce): whether the business (1) designed the product for the forum state market; (2) directed advertising at the forum state market; (3) established channels for providing regular advice to forum state customers; or (4) marketed a product through a distributor who agrees to serve as a sales agent in the forum state. 480 U.S. at 112. Plaintiffs have not provided record evidence to support a finding of any of these factors.

in the forum state); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550–51 (7th Cir. 2004) (rejecting a stream-of-commerce theory because the plaintiff failed to produce evidence that the defendant introduced the allegedly faulty device into the stream of commerce); *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) (permitting a stream-of-commerce theory to proceed after jurisdictional discovery revealed the foreign defendant specifically designed a product for sale in the forum, agreed to distribute the product, attached labels reflecting the local distributor on the product, shipped the product into the forum, went near the forum to train the distributor's employees about the product, and then sold significant inventory in the market). Plaintiffs did not cite, and the court has not found, any cases in which a trade association that neither manufactures, nor distributes, nor markets, nor directly participates in designing a product could be haled into court under such a theory. The jurisdictional discovery order permitted plaintiffs to obtain documents sufficient to determine whether TTMA played a role in manufacturing, designing, or distributing the vehicle at issue. (Docket Entry No. 22). Additionally, the court's order permitted plaintiffs to cross-examine Bowling, the TTMA president, about statements made in his affidavit, including his statement that TTMA does not manufacture, design, market, or distribute truck trailers. (*Id.*). The discovery provided plaintiffs with ample opportunity to determine whether there was any evidence to suggest that TTMA had any role in the design, manufacture, or marketing of the trailer. Plaintiffs cannot make a *prima facie* showing of specific personal jurisdiction.

In another case involving a trade association, *Graziose v. American Home Products Corp.*, 161 F. Supp. 2d 1149 (D. Nev. 2001), the court granted a motion to dismiss filed by the trade association for lack of personal jurisdiction. In that case, as here, the association limited its activities to lobbying on issues unrelated to the lawsuit, disseminating press releases, hosting an informational website not targeted to the forum, and lacked any nexus to the lawsuit. By contrast, the Fifth Circuit reversed a district court's grant of a motion to dismiss for lack of personal jurisdiction in *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir. 1999). In that case, the plaintiffs presented a *prima facie* case of specific jurisdiction by presenting evidence that tobacco trade associations engaged in intentional misrepresentation, fraud, and other tortious acts that caused cancer, emphysema, and death in the forum state. *Id.* at 626. The record evidence

> tended to corroborate that, despite the tobacco trade associations' knowledge of the addictive and carcinogenic risks associated with use of the tobacco products, they published articles or ads in national publications circulated in Louisiana defending and encouraging the use of tobacco products by adults as safe, wholesome and traditional American activity; and that at least one of the tobacco trade association defendants caused its representatives to appear on national network television programs and broadcast into Louisiana knowingly false representations that tobacco products were not addictive, that the tobacco manufacturer defendants did not manipulate the products' levels of nicotine for the purpose of causing and maintaining addictions in consumers, and that there was no reliable scientific evidence or indication that the use of tobacco products caused compelling addictions or cancers.

*Id.* In this case, plaintiffs allege a conspiracy between the Great Dane Defendants and TTMA to discourage the use of side underride guard protection. In this case, unlike *Guidry*,

there is no allegation that TTMA, the trade association, directed any such activities to Texas and no evidence to corroborate the existence of any such activities. There is, in short, no basis for this Texas court to assert specific personal jurisdiction over TTMA.

**IV.  Conclusion**

Plaintiffs have not presented a *prima facie* case for personal jurisdiction. Defendant TTMA's motion to dismiss for lack of personal jurisdiction is granted.

SIGNED on September 29, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge